**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**AT CLARKSBURG**

ALPS PROPERTY & CASUALTY
INSURANCE COMPANY,

          **Plaintiff,**

    **v.**

DAVID A. SIMS, ESQ.;
LAW OFFICES OF DAVID A. SIMS,
PLLC; and, A.R.W., as Guardian and Next
Friend of L.R.,

          **Defendants.**

ELECTRONICALLY
FILED
Nov 03 2022
U.S. DISTRICT COURT
Northern District of WV

Civil Action No. **1:22-CV-111**
Judge **Kleeh**

## COMPLAINT

Plaintiff ALPS Property & Casualty Insurance Company ("ALPS"), pursuant to 28 U.S.C. §§ 2201(a) and 2202 and Federal Rules of Civil Procedure 8(a) and 57, for its Complaint against Defendants David A. Sims, Esq. ("Sims"), Law Offices of David A. Sims, PLLC ("Sims Firm" and together with Sims, "Sims Defendants"), and A.R.W. ("A.R.W.")[1], as guardian and next friend of L.R. ("L.R.")[2], alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      ALPS is an insurance company and corporation organized under the laws of the State of Montana with its principal place of business in the State of Montana; ALPS is a citizen of the State of Montana.

---

[1]ALPS will refer to A.R.W. and the Sims Defendants collectively as "Defendants".
[2]Pursuant to LR Gen P 5.08(a)(2), because L.R. is a minor, ALPS will use initials to refer to the minor and, in an abundance of caution, will similarly use initials to refer to the minor's mother, A.R.W.

2.      Sims is an attorney licensed in the State of West Virginia and, upon information and belief, domiciled in and a citizen of the State of West Virginia.

3.      The Sims Firm is a professional limited liability company organized under the laws of the State of West Virginia with its principal place of business in Vienna, West Virginia. Sims is, upon information and belief, the sole member of the Sims Firm.

4.      Because Sims is, upon information and belief, domiciled in and a citizen of the State of West Virginia, and Sims is, upon information and belief, the sole member of the Sims Firm, the Sims Firm is a citizen of the State of West Virginia.

5.      A.R.W. is, upon information and belief, a resident of Monongalia County, West Virginia, domiciled in the State of West Virginia, and a citizen of the State of West Virginia.

6.      The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between ALPS and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims for relief occurred in this district.

## GENERAL ALLEGATIONS

8.      In this insurance coverage action, ALPS seeks a judgment declaring Lawyers Professional Liability Insurance Policy No. ALPS19901-4 issued by ALPS to the Sims Firm for the policy period April 14, 2020 to April 14, 2021 ("Policy") does not afford coverage to the Sims Defendants with respect to the claim ("Claim") by A.R.W. against the Sims Defendants, as articulated in the suit styled *A.R.W. v. David A. Sims, et al.*, No. 22-C-251 (Cir. Ct. Monongalia Cty., W. Va.) ("Suit").  A true and correct copy of the Policy is attached as Exhibit A.

## I.  Background

### A.  2006 Birth of L.R. and Alleged Injuries

9.      The Claim arises from the Sims Defendants' representation of A.R.W. in the suit styled *A.R.W., as guardian and next friend of L.R. v. Kerr, et al.*, No. 18-C-102 (Cir. Ct. Monongalia Cty., W. Va.) ("Medical Malpractice Suit").  (October 17, 2022 Complaint in the Suit ("October 2022 Complaint") ¶¶ 22, 44-46.  A true and correct copy of the October 2022 Complaint is attached as Exhibit B.).

10.     The Medical Malpractice Suit was a professional negligence suit against various medical providers and institutions arising from the premature birth of A.R.W.'s son, L.R., in 2006.  (March 7, 2018 Complaint in the Medical Malpractice Suit ("Medical Malpractice Complaint") ¶¶ 33-94; Exhibit B ¶ 22.  A true and correct copy of the Medical Malpractice Complaint is attached as Exhibit C.).

11.     In 2006, A.R.W. gave birth to L.R. at West Virginia University Hospitals, Inc. ("WVUH"), also known as Ruby Memorial Hospital ("RMH").  (June 5, 2019 Order Granting Defendants' Motions to Dismiss in the Medical Malpractice Suit ("June 2019 Order"), Findings of Fact ¶ 1; Exhibit B ¶ 19.  A true and correct copy of the June 2019 Order is attached as Exhibit D.).

12.     Prior to arriving at RMH on the date in 2006 when L.R. was born[3], earlier the same day, A.R.W. alleges she presented to her obstetrical provider, Jann Foley ("Foley"), a Certified Nurse Midwife at Women's Healthcare of Morgantown, Inc. ("WHM"), who directed A.R.W. to drive herself to Monongalia County General Hospital, Inc. ("MCGH").

---

[3]L.R.'s date of birth is a significant date in this coverage action, the Suit, and the Medical Malpractice Suit.  Pursuant to LR Gen P 5.08(a)(3), which prohibits public filings with an individual's date of birth, ALPS will refer in this Complaint only to the year L.R. was born, 2006, and not the month or day. Pursuant to LR Gen P 5.08(a)(3), ALPS redacted all but the year of L.R.'s birth from the exhibits filed with this Complaint.

(Exhibit C ¶¶ 15-16;  Exhibit B ¶¶ 10-12;  October 10, 2019 Notice of Appeal in the Medical Malpractice Suit ("October 2019 Notice of Appeal"), Attach. 2, at 1.  A true and correct copy of the October 2019 Notice of Appeal is attached as Exhibit E.).

13.     A.R.W. alleges she drove herself to MCGH, as directed, MCGH admitted A.R.W., MCGH placed a fetal monitor on A.R.W., and the fetal monitor detected fetal distress. (Exhibit C ¶ 17; Exhibit B ¶ 13; Exhibit E, Attach. 2, at 1).  A.R.W. further alleges L.R. should have been delivered at this time, approximately 1:30 p.m. on L.R.'s date of birth in 2006. (Exhibit E, Attach. 2, at 1).

14.     At approximately 2:30 p.m. on L.R.'s birthdate in 2006, after further fetal testing at MCGH, A.R.W. alleges "the decision was made to transfer [A.R.W.] by private car to [RMH]" for delivery because MCGH did not have a NICU.  (Exhibit E, Attach. 2, at 1-2; Exhibit C ¶ 21; Exhibit B ¶ 17).

15.     A.R.W. alleges her mother drove her to RMH, A.R.W. was admitted to the Labor and Delivery Department of RMH at 5:30 p.m., and, despite test results indicating the need for an emergency C-section, "the C-Section did not occur until 6:35 p.m." on L.R.'s birthdate in 2006.  (Exhibit E, Attach. 2, at 2; Exhibit C ¶¶ 25-27).  A.R.W. further alleges L.R. was born with Apgar scores of 1, 7, and 8, and immediately transferred to the NICU of RMH.  (Exhibit E, Attach. 2, at 2; Exhibit C ¶ 28; Exhibit B ¶¶ 19-20).

16.     A.R.W. alleges, upon admission to the NICU, L.R. "had no suck reflex, poor gag reflex, . . . fair to poor muscle tone without flexion[,]" and "a grade 1-2 bilateral germinal matrix bleed" in his brain.  (Exhibit E, Attach. 2, at 2; Exhibit C ¶¶ 29-30; Exhibit B ¶ 20).  A.R.W. further alleges L.R. was intubated, placed on a ventilator, and remained in the NICU for 27 days. (Exhibit B ¶¶ 20-21; Exhibit E, Attach. 2, at 2; Exhibit C ¶ 30; Exhibit D, Findings of Fact ¶ 3).

17.     In or around 2010, when L.R. was four years old, A.R.W. "began to suspect there was something 'wrong' and that her son exhibited possible developmental delays." (Exhibit D, Findings of Fact ¶ 4). A.R.W.'s "realization coincided with her training as a Registered Nurse practicing in labor and delivery." (*Id.*).

18.     A.R.W. alleges L.R. "suffered from hypoxia while in utero, which has led to [L.R.]'s continuing issues of: Pervasive Developmental Disorder (PDD), attention-deficit/hyperactivity disorder (ADHD), a stuttering disorder, rage reaction with violent behavior disorder, the development of TICS; and pervasive developmental delays." (Exhibit E, Attach. 2, at 2; Exhibit C ¶ 31; Exhibit B ¶ 32). A.R.W. further alleges L.R. "will not ever be able to be employed or to live independently" and "will require some degree of care the rest of his natural life[.]" (Exhibit E, Attach. 2, at 2; Exhibit C ¶ 31).

## B. Medical Malpractice Suit

19.     In or around December 2015, A.R.W. "retained" the Sims Defendants "to represent the interests of her minor son with respect to the care provided to them on [L.R.'s birthdate in] 2006." (Exhibit D, Findings of Fact ¶ 5).

20.     On December 9, 2015, A.R.W. "requested medical records for herself and her son from WVUH by executing a Medical Records Release form." (Exhibit D, Findings of Fact ¶ 6).

21.     On April 10, 2017, A.R.W. "requested medical records for herself and her son from MGH by executing an Authorization for Release of Protected Health Information." (Exhibit D, Findings of Fact ¶ 7).

22.     In February 2018—on L.R.'s twelfth birthday—the Sims Defendants, on behalf of A.R.W., "mailed a Notice of Claim with Screening Certificates of Merit, signed by Michael D. Katz, M.D. and Jeffrey L. Soffer, M.D.," to Richard Kerr, M.D., Foley, WHM, MCGH, WVUH,

Tyler Prouty, M.D., and West Virginia University Board of Governors (collectively, "Medical Malpractice Defendants").  (Exhibit D, Findings of Fact ¶ 11; Exhibit B ¶¶ 28, 30, 32).

23.     In Dr. Soffer's February 2, 2018 Affidavit and Certificate of Merit ("Soffer Affidavit"), he described multiple "breaches of the standard of care" arising from the care A.R.W. and L.R. received on [L.R.'s birthdate in] 2006 and stated "[t]here is no question that the failure to deliver this baby sooner was a proximate cause of an injury to [L.R.]." (Soffer Affidavit at pp. 2-5; Exhibit B ¶ 30.  A true and correct copy of the Soffer Affidavit is attached as Exhibit F.).

24.     On March 7, 2018, on behalf of A.R.W., the Sims Defendants filed a complaint in the Medical Malpractice Suit against the Medical Malpractice Defendants.  (Exhibit C).

25.     A.R.W. alleged the following causes of action against the Medical Malpractice Defendants arising from the care she and L.R. received on L.R.'s birthdate in 2006: (a) negligent supervision against Dr. Kerr; (b) medical professional negligence against Dr. Kerr; (c) medical professional negligence against Foley; (d) respondeat superior liability against WHG, the employer of Dr. Kerr and Foley; (e) medical negligence and breaches of the standard of care against MCGH; (f) medical negligence and breaches of the standard of care against WVUH; (g) negligence and respondeat superior liability against the West Virginia University Board of Governors, the employer of Dr. Prouty; and (h) medical professional negligence against Dr. Prouty.  (Exhibit C ¶¶ 33-94).

### 1.  Medical Malpractice Defendants' Motions to Dismiss and Answers

26.     On April 11, 2018, WVUH filed a motion to dismiss the Medical Malpractice Complaint ("WVUH Motion to Dismiss") for "failure to properly comply with the pre-suit notice and certificate process set forth in W. Va. Code § 55-7B-6b (2003), and thus to state a valid

claim against WVUH for medical negligence." (WVUH Motion to Dismiss at 1; Exhibit B ¶ 35. A true and correct copy of the WVUH Motion to Dismiss is attached as Exhibit G.).

27.     In the WVUH Motion to Dismiss, WVUH alleged A.R.W.'s "Notice of Claim fails to set forth with any specificity the standard of care and alleged breach(es) of that standard applicable to the WVUH nurses or other employees who might have assisted in [A.R.W.'s] . . . 2006 labor and delivery, as required by W. Va. Code § 55-7B-3." (Exhibit G, Memorandum at 1).

28.     On April 20, 2018, Dr. Kerr, Foley, WHM, and MCGH (collectively, "MCGH Defendants") filed a motion to dismiss the Medical Malpractice Complaint ("MCGH Motion to Dismiss") on statute of limitations grounds. (MCGH Motion to Dismiss; Exhibit B ¶ 35. A true and correct copy of the MCGH Motion to Dismiss is attached as Exhibit H.).

29.     In the MCGH Motion to Dismiss, the MCGH Defendants argued:

[T]he Court should dismiss [A.R.W.'s] Complaint because her Notice of Claim was not mailed – and, thus, her action against [the MCGH] Defendants was not commenced – within the twelve-year statute of limitations period provided by W. Va. Code § 55-7B-4(b). Because the claim was commenced on – and not prior to – the minor's twelfth birthday, it falls outside the available statutory window for commencing this claim. As a result, the [Medical Malpractice] Complaint fails to state a claim upon which relief may be granted, and dismissal of this action is mandatory.

(Exhibit H at 2).

30.     West Virginia Code § 55-7B-4(b) provides: "[a] cause of action for injury to a minor, brought by or on behalf of a minor who was under the age of ten years at the time of such injury, shall be commenced within two years of the date of such injury, or prior to the minor's twelfth birthday, whoever provides the longer period." (Exhibit H at 6; Exhibit B ¶ 23).

31.     The MCGH Defendants contended, "[b]ecause [A.R.W.'s] claim was not timely initiated prior to the minor's twelfth birthday, it is barred by the statute of limitations, and there is no justiciable claim."  (Exhibit H at 4, 6).

32.     Specifically, the MCGH Defendants argued:

[A.R.W.] did not comply with the applicable statute of limitations for the commencement of this claim on behalf of [L.R.] because she failed to initiate her action "prior to" [L.R.]'s twelfth birthday.   [L.R.] was born [on his birthdate in] 2006.   [A.R.W.'s] Notice of Claim was dated *on* [L.R.]'s twelfth birthday [in 2018]. . . . The MPLA explicitly provides that a cause of action must be filed *prior to* a minor's twelfth birthday.  W. Va. Code § 55-7B-4(c).  Notably, the day of the minor's twelfth birthday is excluded.  . . . [A.R.W.] indisputably failed to initiate this claim *prior to* . . . [L.R.]'s twelfth birthday [in 2018], and her claim fails as a matter of law.  Although the MPLA generally provides that the statute of limitations is tolled when a plaintiff mails a notice of claim, [A.R.W.] mailed her Notice of Claim *on* [L.R.]'s twelfth birthday, the day after the limitations period expired.

(Exhibit H at 7-8) (emphasis in original).

33.     On April 20, 2018, the MCGH Defendants filed answers ("MCGH Answers") simultaneously with the MCGH Motion to Dismiss.   True and correct copies of the MCGH Answers are attached as Exhibit I.

34.     The MCGH Answers all asserted "application of the statute of limitations, codified at W. Va. Code § 55-7B-4(b) (2003)," as an affirmative defense to the allegations in the Medical Malpractice Complaint.  (Exhibit I, First Defense at 1).

35.     On May 3, 2018, WVUH filed a joinder in support of the MCGH Motion to Dismiss ("WVUH Joinder").   A true and correct copy of the WVUH Joinder is attached as Exhibit J.

36.     In the WVUH Joinder, WVUH sought to join the MCGH Motion to Dismiss and "to also assert that [A.R.W.] has failed to commence her action as to WVUH within the statutory

time limit set forth in West Virginia's Medical Professional Liability Act[,]" W. Va. Code § 55-7B-4(b).  (Exhibit J at 1).

37.     On May 4, 2018, Dr. Pouty and the West Virginia University Board of Governors (together, "WVU Defendants") filed a motion to dismiss the Medical Malpractice Complaint on statute of limitations grounds ("WVU Motion to Dismiss") and, in the alternative, simultaneously filed an answer to the Medical Malpractice Complaint ("WVU Answer").  A true and correct copy of the WVU Motion to Dismiss and the WVU Answer, filed as one document, is attached as Exhibit K.

38.     In the WVU Motion to Dismiss, the WVU Defendants alleged the Medical Malpractice Complaint "is time barred because it was commenced late, one day outside the applicable statute of limitation, [W. Va. Code § 55-7B-4(b)][,] such that [A.R.W.'s] Complaint fails to state a claim upon which relief can be granted and must be dismissed under Rule 12(b)(6)."  (Exhibit K, WVU Motion to Dismiss at 2).  In the WVU Answer, the WVU Defendants asserted the statute of limitations in W. Va. Code § 55-7B-4(b) as an affirmative defense.  (Exhibit K, WVU Answer, Twenty-Third Affirmative Defense).

39.     On August 7, 2018, the court in the Medical Malpractice Suit held a hearing ("August 2018 Hearing") on the WVUH Motion to Dismiss and the MCGH Motion to Dismiss.  (Transcript of Proceedings for the August 7, 2018 Hearing in the Medical Malpractice Suit ("August 2018 Transcript") at 1; Exhibit B ¶ 34.  A true and correct copy of the August 2018 Transcript is attached as Exhibit L.).

40.     The Sims Defendants appeared on behalf of A.R.W. at the August 2018 Hearing.  (Exhibit L at 3:11; Exhibit B ¶ 34).

41.     The focus of the parties' arguments at the August 2018 Hearing was application of the statute of limitations in W. Va. Code § 55-7B-4(b).  (Exhibit L).

42.     At the conclusion of the August 2018 Hearing, the court noted "for reasons good or bad, a cause of action wasn't timely filed"; the court, however, ordered additional briefing from the parties on "when and if the trial judge within his discretion – his or her discretion can allow a matter to proceed even though it may have failed to follow the statutory deadline." (Exhibit L at 50:1-2 and 50:17-51:4).

43.     In October 2018, as directed by the court in the Medical Malpractice Suit, the parties submitted supplemental briefs on a trial judge's discretion regarding application of the statute of limitations in W. Va. Code § 55-7B-4(b).

44.     On October 25, 2018, the Sims Defendants, on behalf of A.R.W., filed a motion for leave to file an amended complaint.

45.     On December 11, 2018, the Medical Malpractice Defendants filed a joint opposition to A.R.W.'s motion for leave to amend the complaint, on the ground amendment would be futile.

46.     On December 14, 2018, the court held a status conference in the Medical Malpractice Suit and directed the parties to file additional briefs on the constitutionality of the statute of limitations in W. Va. Code § 55-7B-4(b) and related matters.  The parties submitted additional briefs and, on March 21, 2019, the court held a hearing ("March 2019 Hearing") on the Medical Malpractice Defendants' motions to dismiss and A.R.W.'s motion to amend the complaint.  (Transcript of Proceedings for the March 2019 Hearing ("March 2019 Transcript"). A true and correct copy of the March 2019 Transcript is attached as Exhibit M.).

47.     At the March 2019 Hearing, the court noted: "as a judge, I'm looking at a child that's harmed for life, and they failed to file within hours of when they should have.  And I find it just very difficult.  But hopefully I can make the right decision."  (Exhibit M at 9:7-10).  At the conclusion of the March 2019 Hearing, the court stated: "I'm going to grant the motion to dismiss across the board.  I'm going to deny [A.R.W.'s] motion to amend."  (*Id.* at 44:16-17).  The court further stated: "I'm going to grant the motion to dismiss.  Take an appeal. . . . Take an appeal, Mr. Sims.  Mr. Sims, I think I'm following the law.  But I wouldn't be upset if you were able to overrule me on this. . . . Ms. W[.], you missed the filing by hours.  Hours.  And that's all I'll say."  (*Id.* at 53:13-21).

48.     By order dated June 5, 2019, the court in the Medical Malpractice Suit granted the Medical Malpractice Defendants' motions to dismiss the Medical Malpractice Suit on statute of limitations grounds, denied A.R.W.'s motion to amend the Medical Malpractice Complaint as futile, and ordered the Medical Malpractice Complaint "dismissed in its entirety with prejudice[.]"  (Exhibit D at 1, 14; Exhibit B ¶ 36).

49.     In the June 2019 Order, the court determined, *inter alia*: (a) "[b]ased upon the clear and unambiguous language set forth at W. Va. Code § 55-7B-4(b), for a claim asserted on behalf of a minor plaintiff to be timely, the cause of action shall be commenced *prior to* the minor's twelfth birthday"; (b) "[c]ompliance with this statutory pre-requisite is mandatory"; (c) L.R.'s "twelfth birthday began, at the latest, at 12:00 a.m. on [his birthday in] 2018"; (d) it is "undisputed that [A.R.W.] did not commence her action with the mailing of her Notice of Claim or Screening Certificates of Merit *prior to* the minor's twelfth birthday"; (e) "[i]t is also undisputed that [A.R.W.] did not invoke the tolling mechanism codified at West Virginia Code § 55-7B-6(d) which permits a claimant to provide all putative defendants with a statement

of intent to provide a screening certificate of merit within sixty days of the date the health care provider receives the notice of claim"; (f) "[b]ased upon the application of the law to these facts, this Court determines that the claims set forth in the Complaint filed by [A.R.W.] are time-barred under W. Va. Code § 55-7B-4(b)"; and (g) "[r]egardless of whether the statute is characterized as a statute of limitations or a statute of repose, it is clear that [A.R.W.] failed to commence her claim *prior to* the minor's twelfth birthday and, therefore, did not meet the requirements of the statute for initiating a claim.  (Exhibit D, Conclusions of Law ¶¶ 7-14, 41) (emphasis in original).

50.     In the June 2019 Order, the court further determined neither "equitable tolling" nor "equitable estoppel" applied to "preclude application of W. Va. Code § 55-7B-4(b) to [A.R.W.'s] claims."  (Exhibit D, Conclusions of Law ¶¶ 29-39).  With respect to equitable estoppel, the court determined A.R.W. failed to identify "any conduct by [the Medical Malpractice] Defendants", such as "fraud, misrepresentation, or obstruction[,] which might permit [the] Court to extend the doctrine of equitable estoppel to shield [A.R.W.'s] claim from the application of W. Va. Code § 55-7B-4(b)."  (*Id*. ¶ 30).  As to equitable tolling, the court determined the "facts do not demonstrate that [A.R.W.] has diligently pursued her rights and was prevented from timely initiating her action."  (*Id*. ¶ 35).  One of the reasons the court provided for refusing to apply equitable tolling was the Sims Defendants' acknowledgement "on the record that [Sims] mistakenly believed the statute of limitations did not expire until the end of the date of the minor's twelfth birthday, and not the day 'prior to' that birthday."  (*Id*. ¶ 34).

51.     In the June 2019 Order, with respect to A.R.W.'s motion to amend the Medical Malpractice Complaint, the court determined the motion was "futile since the Amended Complaint would necessarily relate back to the date the original Complaint was filed, which is

*after* the statute of limitations had expired."  (Exhibit D, Conclusions of Law ¶ 50) (emphasis in original).

52.     On June 13, 2019, on behalf of A.R.W., the Sims Defendants filed a motion for relief from the judgment entered in favor of the Medical Malpractice Defendants in the June 2019 Order.  The Medical Malpractice Defendants opposed A.R.W.'s motion, the court heard oral arguments on September 5, 2019, and, by order dated September 11, 2019, the court denied A.R.W.'s motion for relief from judgment.  (Exhibit E, Attach. 5).

**2.  Appellate Proceedings - Supreme Court of Appeals of West Virginia**

53.     On October 10, 2019, on behalf of A.R.W., the Sims Defendants filed a notice of appeal with respect to the trial court's June 2019 Order dismissing the Medical Malpractice Complaint with prejudice on statute of limitations grounds.  (Exhibit E; Exhibit B ¶ 37).

54.     On January 13, 2020, on behalf of A.R.W., the Sims Defendants filed A.R.W.'s opening appellate brief with the Supreme Court of Appeals of West Virginia ("Supreme Court of Appeals").

55.     On February 26, 2020, the Medical Malpractice Defendants filed their opening appellate brief and, on May 18, 2020, the Sims Defendants filed A.R.W.'s reply brief.

56.     In a Memorandum Decision dated December 16, 2020 ("December 2020 Decision"), the Supreme Court of Appeals dismissed A.R.W.'s appeal of the trial court's June 2019 Order in the Medical Malpractice Suit.  (Exhibit B ¶ 37; December 2020 Decision. A true and correct copy of the December 2020 Decision is attached as Exhibit N.).

57.     In the December 2020 Decision, the Supreme Court of Appeals relied on Rule 21 of the West Virginia Rules of Appellate Procedure and dismissed the appeal on procedural

grounds—rather than on its merits—because the Sims Defendants, on behalf of A.R.W., "failed to set forth a single assignment of error" in A.R.W.'s opening brief on appeal.  (Exhibit N at 2).

58.     The Supreme Court of Appeals determined "substantial justice" would not be "served [by] overlooking the failure of a litigant to succinctly state the point at which she believes the lower court stumbled.  An assignment of error is a vital tool in promoting judicial economy and ensuring that no party finds his position inequitably represented."  (Exhibit N at 3).

59.     On January 15, 2021, on behalf of A.R.W., the Sims Defendants filed a petition for rehearing in response to the December 2020 Decision dismissing A.R.W.'s appeal for failure to comply with the West Virginia Rules of Appellate Procedure.  (Exhibit B ¶ 38).

60.     On January 28, 2021, the Medical Malpractice Defendants filed a brief in opposition to A.R.W.'s petition for rehearing and, by order dated March 18, 2021, the Supreme Court of Appeals denied A.R.W.'s petition for rehearing.  (Exhibit B ¶ 38).

## C.  The Suit

61.     On October 20, 2022, A.R.W. filed the October 2022 Complaint against the Sims Defendants in the Suit.  (Exhibit B).

62.     In the October 2022 Complaint, A.R.W. alleges professional negligence against the Sims Defendants arising from their representation of A.R.W. in the Medical Malpractice Suit.  (Exhibit B ¶¶ 22, 40-46).

63.     In the October 2022 Complaint's only cause of action, for legal malpractice, A.R.W. alleges: (a) the Sims Defendants "breached their duties to act in a manner that is consistent with what a reasonable attorney would do under the same or similar situation by failing to file the pre-suit Notice of Claim required for a medical malpractice lawsuit within the statutory time frame set forth in the West Virginia Medical Professional Liability Act"; (b) "[b]y

failing to serve the pre-suit Notice of Claim required for a medical malpractice lawsuit within the statutory time frame set forth in the West Virginia Medical Professional Liability Act, [A.R.W.] suffered damages by having [the Medical Malpractice Suit] dismissed on a procedural technicality"; and (c) "[c]onsequently, [the Sims Defendants] committed medical [*sic*] malpractice, and are thereby liable for the damages that their malpractice caused to [A.R.W.]." (Exhibit B ¶¶ 44-46).

64.     In the October 2022 Complaint, A.R.W. seeks the following relief from the Sims Defendants: (a) damages for "pain, suffering, mental anguish", "annoyance and inconvenience," and "embarrassment"; (b) "medical expenses"; (c) "loss of future income"; (d) "the costs of future medical care and expenses"; (e) "the costs of future non-medical care and expenses"; (f) attorneys' fees; and (g) prejudgment and post-judgment interest.   (Exhibit B, Prayer for Relief).

## II.  The Policy and Previous Applications

### A.  2019 Application and 2019-2020 Policy

65.     On April 15, 2019, Sims executed an application ("2019 Application") on behalf of the Sims Firm for Lawyers Professional Liability Policy No. ALPS19901-3 issued by ALPS to the Sims Firm for the policy period April 14, 2019 to April 14, 2020 ("2019-2020 Policy").

66.     In the Claims History Section of the 2019 Application, Sims answered "No" to the question: "Since the date of your previous application with ALPS, have you or any member of the Firm become aware of or acquired knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against any current or former Attorney in the Firm or any Predecessor Firms, regardless of the merit of such claim?"

15

67.     In the Individual Attorney Supplement to the 2019 Application Sims executed on April 15, 2019, Sims answered "No" to the question: "Since the date of your previous application with ALPS, have you become aware of or do you have knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against you or any current or former Attorney in the Firm or its predecessors, regardless of the merit of such claim?"

68.     The 2019 Application provides:

Failure to report any claim made against the applicant Firm or any attorney in the applicant Firm under any current or previous insurance policy, or the failure to timely disclose facts, events or circumstances which may give rise to a claim against any current or prior insured, may result in the absence of insurance coverage for any such claim, facts, events, or circumstances which should have been reported, and may result in the cancellation or rescission of any policy ALPS may issue in reliance upon this application.

69.     ALPS issued the 2019-2020 Policy to the Sims Firm for the policy period April 14, 2019 to April 14, 2020.

## B.  2020 Application

70.     On April 14, 2020, Sims executed an application ("2020 Application") on behalf of the Sims Firm for the Policy.

71.     In the Claims History Section of the 2020 Application, Sims answered "No" to the question: "Since the date of your previous application with ALPS, have you or any member of the Firm become aware of or acquired knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against any current or former attorney in the Firm or any Predecessor Firms, regardless of the merit of such claim?"

72.     In the Individual Attorney Supplement to the 2020 Application Sims executed on April 14, 2020, Sims answered "No" to the question: "Since the date of your previous

application with ALPS, have you become aware of or do you have knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against you or any current or former Attorney in the Firm or its predecessors, regardless of the merit of such claim?"

73.     The 2020 Application provides:

Failure to report any claim made against the applicant Firm or any attorney in the applicant Firm under any current or previous insurance policy, or the failure to timely disclose facts, events or circumstances which may give rise to a claim against any current or prior insured, may result in the absence of insurance coverage for any such claim, facts, events, or circumstances which should have been reported, and may result in the cancellation or rescission of any policy ALPS may issue in reliance upon this application.

74.     The 2020 Application further provides:

**IT IS AGREED THAT ANY CLAIM ARISING FROM OR IN CONNECTION WITH ANY CLAIM, SUIT, FACT, EVENT, CIRCUMSTANCE, ACT, ERROR OR OMISSION DISCLOSED OR THAT SHOULD HAVE BEEN DISCLOSED IN RESPONSE TO THE CLAIM HISTORY SECTION OF THIS APPLICATION WILL BE EXCLUDED FROM COVERAGE UNDER THE POLICY.**

(Emphasis in original).

## B.  The Policy

75.     ALPS issued the Policy to the Sims Firm for the policy period April 14, 2020 to April 14, 2021.  (Exhibit A, Declarations Items 1 and 4).  The Policy provides limits of liability of $5,000,000 each claim and $5,000,000 in aggregate.  (*Id.*, Declarations Item 5).

76.     Sims is listed as the sole individual attorney insured under the Policy.  (Exhibit A, Declarations Item 3).

77.     The Policy provides legal professional liability insurance on a claims made and reported basis.  (Exhibit A, Insuring Agreements § 1.A).

78.     The Policy's insuring agreement states, in relevant part:

A.      COVERAGE

Subject to the Limit of Liability, exclusions, conditions and other terms of this Policy, the Company agrees to pay on behalf of the Insured all sums (in excess of the Deductible amount) that the Insured becomes legally obligated to pay as Damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD, provided that all of the following conditions are satisfied:

1.      The Claim arises from a Wrongful Act that occurred on or after the Retroactive Coverage Date set forth in Item 2 of the Declarations;

2.      At the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the Wrongful Act might be the basis of a Claim;

3.      Notice of the Claim or the Wrongful Act was not given nor required to be given to any other insurer prior to the Effective Date; and

4.      The Claim is not otherwise covered under any other insurance policy that the Company has issued to the Named Insured.

B.      DEFENSE AND CLAIM EXPENSES

1.      For any Claim covered under this Policy, the Company shall have the right and the duty to defend such Claim even if any or all of the allegations of the Claim are groundless, false or fraudulent[.] . . .

2.      The Company shall pay Claim Expenses in accordance with the terms of this Policy.  The Company shall not have a duty to defend or to pay such expenses as to any Claim not covered under this Policy, and shall have the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims.

(Exhibit A, Insuring Agreements §§ 1.A-1.B) (emphasis in original).

79.     "Claim" is defined in the Policy as "a demand for money or services including, but not necessarily limited to, the service of suit or institution of arbitration or alternative dispute resolution proceedings against the Insured."  (Exhibit A, Definitions § 2.C.)

80.     The Policy further provides: "Claim does *not* mean *nor* include any demand, service or proceeding arising from or in connection with any actual or alleged . . . Bodily Injury of any person."  (Exhibit A, Definitions § 2.C.10) (emphasis in original).

81.     "Bodily Injury" is defined in the Policy, in relevant part, as "any mental, psychological, or emotional injury, anguish, tension, distress, pain, suffering, shock or death, regardless of whether or not such condition arises from any injury to the body, from any sickness or disease, or from any death."  (Exhibit A, Definitions § 2.B.)

82.     "Claim Expenses" is defined in the Policy, in relevant part, as "[f]ees charged by any attorney(s) designated" by ALPS "to defend a Claim or otherwise represent an Insured;" and "[a]ll other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a Claim (including a suit or proceeding arising in connection therewith), if incurred by" ALPS.  (Exhibit A, Definitions §§ D.1-D.2).

83.     "Wrongful Act" is defined in the Policy as "an actual or alleged: (1) [a]ct, error or omission in Professional Services that were or should have been rendered by the Insured; and (2) [a] Personal Injury resulting from the Professional Services of the Insured."  (Exhibit A, Definitions § 2.DD).

84.     "Damages" is defined in the Policy as any "[m]onetary award by way of judgment or final arbitration, or any settlement"; the Policy specifically excludes from the definition of "Damages":

> 3.     Punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, including, without limitation, any consequential or incidental

damages, attorney's fees or costs, or pre-judgment or post-judgment interest resulting therefrom, regardless against whom the same are levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;

4.      Awards deemed uninsurable by law;

5.      Injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;

6.      Restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured;

7.      Injury or damage to, destruction of, loss of, or loss of use of any funds or property; or

8.      Pollution, contamination or erosion of any property.

(Exhibit A, Definitions § 2.H).

85.     The Policy provides:

6.B.1   When an Insured becomes aware of a Wrongful Act that could reasonably be expected to be the basis of a Claim, but no Claim arising therefrom has yet been made, then as a condition precedent to the Company's obligation to defend or indemnify the Insured under this Policy, the Insured shall immediately give written notice to the Company.  Such notice shall include the fullest information obtainable concerning the potential Claim.

* * *

6.B.4   . . . [I]n the event an Insured fails to give written notice to the Company of a potential Claim, as described in Section 6.B.1, prior to the end of the Policy Period in which the Insured first becomes aware of the act, error, omission, or Personal Injury, then no coverage for any such Claim shall be afforded to the Insured under any future policy issued by the Company.

(Exhibit A, Conditions §§ 6.B.1 & 6.B.4).

86.     The Policy does not apply to:

ANY   CLAIM   ARISING   FROM   OR   IN   CONNECTION WITH . . . [a]ny Wrongful Act that occurred prior to the Effective Date of this Policy, if . . . [t]here is an earlier-incepting policy of professional liability that

provides coverage for the Claim, or would have provided coverage for the Claim if the Insured's obligations under that policy had been complied with, regardless of the amount, if any, of the available limits of liability of the prior policy, and regardless of whether or not the deductible provisions or limits of liability of the prior policy are different from those of this Policy[.]

(Exhibit A, Exclusions § 3.E.2) (emphasis in original).

87.    The Policy does not apply to:

ANY    CLAIM    ARISING    FROM    OR    IN    CONNECTION WITH . . . [a]ny Wrongful Act that occurred prior to the Effective Date of this Policy, if . . . [p]rior to the Effective Date of this Policy, any Insured gave or should have given to any insurer, notice of a Claim or potential Claim arising from or in connection with the Wrongful Act, or from any Wrongful Act that is connected temporally, logically or causally, by any common fact, circumstance, situation, transaction, event, advice or decision to the Claim or potential Claim.

(Exhibit A, Exclusions § 3.E.3) (emphasis in original).

### III.  Notice to ALPS and ALPS's Coverage Position

88.    By correspondence dated December 30, 2020 ("December 30, 2020 Correspondence"), the Sims Defendants first provided ALPS with notice of circumstances from which a claim could arise from the Sims Defendants' representation of A.R.W.

89.    By correspondence dated October 17, 2022, the Sims Defendants provided ALPS with notice of the Suit and a copy of the October 2022 Complaint.

90.    By correspondence dated November 2, 2022, ALPS agreed to provide the Sims Defendants with a defense against the Claim, as articulated in the Suit, under the Policy subject to a complete reservation of ALPS's rights to deny coverage and reimbursement of defense costs, and ALPS has provided such defense.

4857-4409-8875.2

## FIRST CAUSE OF ACTION

### (For a Declaration the Policy Does Not Afford Coverage to the Sims Defendants for the Claim – Against all Defendants)

91.     ALPS incorporates and realleges paragraphs 1 through 90 as if fully set forth herein.

92.     The Policy potentially provides coverage for claims only if "[a]t the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the Wrongful Act might be the basis of a Claim[.]"  (Exhibit A, Insuring Agreements § 1.A.2).

93.     The Policy specifically excludes from coverage any claim arising from or in connection with "[a]ny Wrongful Act that occurred prior to" the Policy's April 14, 2020 effective date if:

> Prior to the Effective Date of this Policy, any Insured gave or should have given to any insurer, notice of a Claim or potential Claim arising from or in connection with the Wrongful Act, or from any Wrongful Act that is connected temporally, logically or causally, by any common fact, circumstance, situation, transaction, event, advice or decision to the Claim or potential Claim.

(Exhibit A, Exclusions § 3.E.3).

94.     Under the Policy, "Wrongful Acts" is defined as "an actual or alleged: (1) [a]ct, error or omission in Professional Services that were or should have been rendered by the Insured; and (2) [a] Personal Injury resulting from the Professional Services of the Insured."  (Exhibit A, Definitions § 2.DD).

95.     The following occurred prior to the Policy's April 14, 2020 effective date:

a.     On April 20, 2018, the MCGH Defendants filed a motion to dismiss the Medical Malpractice Complaint on statute of limitations grounds. (Exhibit H).  In the MCGH Motion to Dismiss, the MCGH Defendants alleged: "[T]he Court should dismiss [A.R.W.'s] Complaint because her Notice of Claim was not mailed – and, thus, her action against [the MCGH] Defendants was not commenced – within the twelve-year statute of limitations period provided by W. Va. Code § 55-7B-4(b).

Because the claim was commenced on – and not prior to – the minor's twelfth birthday, it falls outside the available statutory window for commencing this claim.  As a result, the [Medical Malpractice] Complaint fails to state a claim upon which relief may be granted, and dismissal of this action is mandatory."  (*Id.* at 2).

b.    On April 20, 2018, the MCGH Defendants filed answers simultaneously with the MCGH Motion to Dismiss.  (Exhibit I).  The MCGH Answers all asserted "application of the statute of limitations, codified at W. Va. Code § 55-7B-4(b) (2003)," as an affirmative defense to the allegations in the Medical Malpractice Complaint.  (*Id.*, First Defense).

c.    On May 3, 2018, WVUH filed a joinder in support of the MCGH Motion to Dismiss.  (Exhibit J).  In the WVUH Joinder, WVUH sought to join the MCGH Motion to Dismiss and "to also assert that [A.R.W.] has failed to commence her action as to WVUH within the statutory time limit set forth in West Virginia's Medical Professional Liability Act[,]" W. Va. Code § 55-7B-4(b).  (*Id.* at 1).

d.    On May 4, 2018, the WVU Defendants filed a motion to dismiss the Medical Malpractice Complaint on statute of limitations grounds and, in the alternative, simultaneously filed an answer to the Medical Malpractice Complaint (Exhibit K).   In the WVU Motion to Dismiss, the WVU Defendants alleged the Medical Malpractice Complaint "is time barred because it was commenced late, one day outside the applicable statute of limitation, [W. Va. Code § 55-7B-4(b),] such that [A.R.W.'s] Complaint fails to state a claim upon which relief can be granted and must be dismissed under Rule 12(b)(6)."  (Exhibit K, WVU Motion to Dismiss at 2).  In the WVU Answer, the WVU Defendants asserted the statute of limitations in W. Va. Code § 55-7B-4(b) as an affirmative defense. (Exhibit K, WVU Answer, Twenty-Third Affirmative Defense).

e.    On August 7, 2018, the Sims Defendant appeared on behalf of A.R.W. for the August 2018 Hearing on the WVUH Motion to Dismiss and the MCGH Motion to Dismiss.  (Exhibit L at 3:11; Exhibit B ¶ 34).  At the conclusion of the August 2018 Hearing, the court noted "for reasons good or bad, a cause of action wasn't timely filed" by A.R.W.  (Exhibit L at 50:1-2).

f.    On March 21, 2019, the court held a hearing on the Medical Malpractice Defendants' motions to dismiss and A.R.W.'s October 25, 2018 motion to amend the Medical Malpractice Complaint.   (Exhibit M).   At the conclusion of the March 2019 Hearing, the court stated: "I'm going to grant the [Medical Malpractice Defendants'] motion to dismiss across the board.  I'm going to deny [A.R.W.'s] motion to amend."  (*Id.* at 44:16-17).

g.      By order dated June 5, 2019, the trial court in the Medical Malpractice
        Suit granted the Medical Malpractice Defendants' motions to dismiss the
        Medical Malpractice Suit on statute of limitations grounds, denied
        A.R.W.'s motion to amend the Medical Malpractice Complaint as futile,
        and ordered the Medical Malpractice Complaint "dismissed in its entirety
        with prejudice."  (Exhibit D at 1, 14; Exhibit B ¶ 36).  In the June 2019
        Order, the court determined, *inter alia*, "the claims set forth in the
        Complaint filed by [A.R.W.] are time-barred under W. Va. Code § 55-7B-
        4(b)" because A.R.W. "failed to commence her claim *prior to* the minor's
        twelfth birthday and, therefore, did not meet the requirements of the
        statute for initiating a claim."  (Exhibit D, Conclusions of Law ¶¶ 7-14,
        41) (emphasis in original).

h.      In the June 2019 Order, the trial court in the Medical Malpractice Suit
        determined neither "equitable tolling" nor "equitable estoppel" applied to
        "preclude application of W. Va. Code § 55-7B-4(b) to [A.R.W.'s] claims."
        (Exhibit D, Conclusions of Law ¶¶ 29-39).   With respect to equitable
        tolling, the court determined the "facts do not demonstrate that [A.R.W.]
        has diligently pursued her rights and was prevented from timely initiating
        her action."  (*Id.* ¶ 35).  One of the reasons the court provided for refusing
        to apply equitable tolling was the Sims Defendants' acknowledgement "on
        the record that [Sims] mistakenly believed the statute of limitations did not
        expire until the end of the date of the minor's twelfth birthday, and not the
        day 'prior to' that birthday."  (*Id.* ¶ 34).

i.      In the June 2019 Order, the court denied A.R.W.'s motion to amend the
        Medical Malpractice Complaint and determined the motion was "futile
        since the Amended Complaint would necessarily relate back to the date
        the original Complaint was filed, which is *after* the statute of limitations
        had expired."   (Exhibit D, Conclusions of Law ¶ 50) (emphasis in
        original).

j.      On June 13, 2019, on behalf of A.R.W., the Sims Defendants filed a
        motion for relief from the judgment entered in favor of the Medical
        Malpractice Defendants in the June 2019 Order, which dismissed the
        Medical Malpractice Complaint with prejudice.

k.      By order dated September 11, 2019, the court denied A.R.W.'s motion for
        relief from the judgment entered in favor of the Medical Malpractice
        Defendants in the June 2019 Order.  (Exhibit E, Attach. 5; *see also*
        Exhibit N at 1).

l.      On October 10, 2019, on behalf of A.R.W., the Sims Defendants filed a
        notice of appeal with respect to the trial court's June 2019 Order
        dismissing the Medical Malpractice Complaint with prejudice on statute of
        limitations grounds and, on January 13, 2020, the Sims Defendants filed

24

A.R.W.'s opening appellate brief with the Supreme Court of Appeals. (Exhibit E).  On February 26, 2020, the Medical Malpractice Defendants filed their opening appellate brief.

96.     Despite knowledge of the events described in Paragraph 95—including, but not limited to, the June 2019 Order dismissing the Medical Malpractice Suit with prejudice—the Sims Defendants did not notify ALPS of any actual or potential claim, or any act, error, or omission by them which might be the basis of a claim against any of the Sims Defendants, prior to the Policy's April 14, 2020 effective date.

97.     The Sims Defendants first notified ALPS of circumstances from which the Claim could arise via the December 30, 2020 Correspondence.

98.     The Claim, as articulated in the Suit, is outside the coverage afforded by the Policy because: (a) prior to the April 14, 2020 effective date of the Policy, the Sims Defendants knew or reasonably should have known the acts, errors, or omissions alleged in the Claim might be the basis of a claim; (b) prior to the Policy's April 14, 2020 effective date, the Sims Defendants should have given ALPS notice of the acts, errors, or omissions that form the basis of the Claim or the potential claims against the Sims Defendants arising from the acts, errors, or omissions that form the basis of the Claim; and (c) the Sims Defendants did not notify ALPS of the acts, errors, or omissions that form the basis of the Claim or the potential claims against the Sims Defendants arising from the acts, errors, or omissions that form the basis of the Claim until December 30, 2020, after inception of the Policy.

99.     The Policy does not afford coverage for the Claim, as articulated in the Suit, to the extent the relief requested does not constitute "Damages" as defined in the Policy. (Exhibit A, Insuring Agreements § 1.A & Definitions § 2.H).

100.    The Policy specifically excludes from the definition of "Damages", in relevant

part:

    3.    Punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, including, without limitation, any consequential or incidental damages, attorney's fees or costs, or pre-judgment or post-judgment interest resulting therefrom, regardless against whom the same are levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding[.]

(Exhibit A, Definitions § 2.H.)

101.    In the Suit, A.R.W. seeks, *inter alia*, attorneys' fees, prejudgment interest, and

post-judgment interest.  (Exhibit B, Prayer for Relief).

102.    A.R.W.'s demands for attorneys' fees related to the Suit, prejudgment interest,

and post-judgment interest are excluded from the definition of "Damages" and outside the

coverage afforded by the Policy.  (Exhibit A, Definitions § 2.H.3).

103.    The Policy only affords coverage with respect to "Damages" arising from or in

connection with a "Claim" against the Insured.  (Exhibit A, Insuring Agreements § 1.A).

104.    Under the Policy, "Claim" is defined as "a demand for money or services

including, but not necessarily limited to, the service of suit or institution of arbitration or

alternative dispute resolution proceedings against the Insured."  (Exhibit A, Definitions § 2.C).

105.    The Policy specifically excludes from the definition of "Claim" any "demand,

service or proceeding arising from or in connection with any actual or alleged . . . Bodily Injury

of any person."  (Exhibit A, Definitions § 2.C.10).

106.    Under the Policy, "Bodily Injury" is defined, in relevant part, as "any mental,

psychological, or emotional injury, anguish, tension, distress, pain, suffering, shock or death,

regardless of whether or not such condition arises from any injury to the body, from any sickness

or disease, or from any death."  (Exhibit A, Definitions § 2.B).

4857-4409-8875.2

107.     In the Suit, A.R.W. seeks, *inter alia*, damages for "pain, suffering, mental anguish", "annoyance and inconvenience," and "embarrassment".  (Exhibit B, Prayer for Relief).

108.     The Policy does not afford coverage for the Claim to the extent it arises from or in connection with any actual or alleged Bodily Injury, which includes mental or emotional injury or distress of any person.  (Exhibit A, Definitions §§ 2.B, 2.C; Exhibit B, Prayer for Relief).

109.     An actual controversy exists between ALPS and Defendants regarding whether the Policy affords coverage for the Claim.

110.     Because the Claim is outside the coverage afforded by the Policy, ALPS is entitled to a declaratory judgment in its favor, pursuant to 28 U.S.C. § 2201, declaring the Policy does not afford coverage for the Claim and ALPS has no duty to defend or indemnify the Sims Defendants with respect to the Claim.

## SECOND CAUSE OF ACTION

### (Reimbursement of Defense Expenses – Against the Sims Defendants)

111.     ALPS incorporates and realleges paragraphs 1 through 110 as if fully set forth herein.

112.     The Policy states ALPS has no duty to defend or pay Claim Expenses for "any Claim not covered" and has "the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims."  (Exhibit A, Insuring Agreements § 1.B.2).

113.     The Policy defines "Claim Expenses" to mean, in relevant part, "[f]ees charged by any attorney(s) designated" by ALPS "to defend a Claim or otherwise represent an Insured;" and "[a]ll other fees, costs, and expenses resulting from the investigation, adjustment, defense, and

4857-4409-8875.2

Case 1:22-cv-00111-TSK   Document 1   Filed 11/03/22   Page 28 of 29   PageID #: 28


appeal of a Claim (including a suit or proceeding arising in connection therewith), if incurred by" ALPS.  (Exhibit A, Definitions §§ D.1-D.2).

114.    ALPS is defending the Sims Defendants with respect to the Claim under the Policy subject to a complete reservation of rights, including the right to seek recovery from Sims, the Sims Firm, or any insured under the Policy of all amounts paid in defense of non-covered aspects of the Claim.

115.    For the reasons described above in Paragraphs 91 through 108, the Claim—as articulated in the Suit—is outside the coverage afforded by the Policy.

116.    ALPS is entitled to judgment in its favor and against the Sims Defendants for the amount of attorneys' fees and costs paid to defend the Sims Defendants with respect to the Claim because the Claim is not covered under the Policy.

**WHEREFORE**, ALPS prays that judgment be entered in its favor and against Defendants as follows:

1.      Declaring the Policy does not afford coverage to the Sims Defendants with respect to the Claim, as articulated in the Suit;

2.      Declaring ALPS has no duty to defend or indemnify the Sims Defendants under the Policy with respect to the Claim, as articulated in the Suit;

3.      Awarding damages in favor of ALPS and against the Sims Defendants in the amount of the attorneys' fees and costs paid to defend the Sims Defendants with respect to the Claim; and

4.      Awarding ALPS such additional relief as shall be deemed appropriate in the circumstances, together with its costs and expenses.

Dated:  November 3, 2022

/s/ *Tiffany R. Durst*
Tiffany R. Durst, #7441
**Pullin, Fowler, Flanagan, Brown & Poe, PLLC**
2414 Cranberry Square
Morgantown, West Virginia 26508
Telephone: (304) 225-2200
Facsimile: (304) 225-2214
Email: tdurst@pffwv.com

*Counsel  for Plaintiff ALPS Property & Casualty*
*Insurance Company*

29